UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

QUEEN BANKS                                                                                    PLAINTIFF

V.                                                              CIVIL ACTION NO. 3:22-CV-433-DPJ-FKB

LAKELAND NURSING AND
REHABILITATION CENTER, LLC; MORGAN
MCGUIRE, LPN, IN HER OFFICIAL AND
PERSONAL CAPACITIES; AND JOHN DOES 1-10                                    DEFENDANTS

ORDER

This medical-negligence case is before the Court on Plaintiff Queen Banks's Motion to Remand [8] and Defendant Morgan McGuire's Motion to Dismiss [4]. McGuire is a diversity-spoiling Mississippi resident, and the question is whether Banks improperly joined her in this action. Finding that she did, the Court denies Banks's motion and grants McGuire's.

I.      Factual and Procedural Background

Consistent with the applicable standards, the following facts are construed in the light most favorable to Banks. Banks was a patient at Lakeland Nursing and Rehabilitation Center, LLC. Compl. [1-4] ¶ 9. On or around April 30, 2021, McGuire (a nurse there) applied Biofreeze gel or some other substance to Banks's shoulders. *Id.* ¶ 10 & n.1. After applying the substance, McGuire left it in the room and exited. *Id.* ¶ 11.

"Immediately thereafter," Jane Doe Defendant 1—who was a personal care assistant employed by Lakeland—rubbed the substance "all over" Banks's body including her genital area. *Id.* ¶ 12. Banks then experienced burning, itching, irritation, and pain all over her body. *Id.* Banks sued Lakeland and McGuire in state court claiming medical negligence, negligent hiring and supervision, gross negligence, and breach of informed consent. She says that the substance should not have been applied to her "eyes, mucous membranes, wounds[,] or

otherwise damaged skin or irritated skin" and such application would not have happened if not for Defendants' negligence.  *Id.* ¶ 14–15.

After Banks sued, Lakeland timely removed under 28 U.S.C. § 1332, arguing that McGuire was improperly joined and that her non-diverse citizenship should be disregarded.  Notice of Removal [1] ¶ 10.  McGuire then asked this Court to dismiss her as a party, arguing that Banks's complaint fails to state a claim against her upon which relief can be granted.  Def.'s Mem. [5] at 4.

After removal and McGuire's motion, Banks filed her motion to remand.  There, Banks said McGuire breached the standard of care by leaving the substance in her room "without physician approval."  Pl.'s Mem. [9] at 6.  Banks further contended that this breach triggered a series of events that culminated in her injury.  *Id.*  The parties thereafter agreed to a 60-day period of remand-related discovery.  *See* Order [17].  After that, they completed briefing their motions.

Banks now avers that it was ELIDEL 1% cream—an eczema treatment—that was misapplied.  Pl.'s Reply [31] at 3.[1]  Banks also says McGuire admitted during deposition testimony that she applied the cream.  *Id.* at 6–7.  Defendants respond by arguing that Banks may not now change the factual basis of her claim, and they further contend that the originally pleaded facts fail to state a viable claim against McGuire.  Defs.' Sur-Reply [35] at 2.

---

[1] The active ingredient in ELIDEL 1% cream is pimecrolimus.  Medical records separately list applications of ELIDEL 1% cream (a name brand) and pimecrolimus 1% (presumably a generic version) to Banks.  Treatment Admin. R. [30-7] at 1.  The name brand was applied on April 30, 2021, but the Court will use "ELIDEL 1% cream" to refer to both the name brand and generic.

II.     Standard

Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant" to federal district court. 28 U.S.C. § 1441(a). Lakeland premises federal jurisdiction on 28 U.S.C. § 1332, under which the district courts have jurisdiction over civil actions between "citizens of different States" where the amount in controversy exceeds $75,000. *Id.* § 1332(a)(1). For diversity jurisdiction to exist, all named plaintiffs and all named defendants must be citizens of different states. *See Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 (2005).

There is a "narrow exception" to the complete-diversity rule that applies when a plaintiff improperly joins a diversity-spoiling defendant. *Smallwood v. Ill. Cent. R.R. Co.* (*Smallwood I*), 352 F.3d 220, 222 (5th Cir. 2003). The test for improper joinder is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood v. Ill. Cent. R.R. Co.* (*Smallwood II*), 385 F.3d 568, 572 (5th Cir. 2004) (en banc).

To predict whether a plaintiff has a reasonable basis for recovery, a "court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id.* When doing so, the Court applies the federal version of Rule 12(b)(6). *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 208 (5th Cir. 2016). And "[a]ny contested issues of fact and any ambiguities of state law must be resolved in [the plaintiff's] favor." *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003). The burden of establishing improper joinder is a

"heavy" one, and the removing party must carry it to remain in federal court.  *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011).

Thus, to avoid dismissal—and in this case to be granted remand—a plaintiff must have pleaded "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 439 (5th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  This is the same standard that applies to McGuire's motion to dismiss.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

For this inquiry, "court[s] accept 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)).  But "[w]e do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."  *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).  Thus, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Ultimately, the standard "'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements."  *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

III.     Analysis

There are two jurisdictional questions the Court must resolve.  First, what is Banks's claim against McGuire?  Second, is there a "reasonable basis . . . to predict that [Banks] might be able to recover against" McGuire for that claim?  *Smallwood II*, 385 F.3d at 572.  The Court will address these questions in turn.

A.      Banks's Claim Against McGuire

As stated above, Banks's claim against McGuire has evolved.  While the complaint does leave wiggle room for Banks to argue that a different cream caused her injuries, *see* Compl. [1-4] ¶ 10 & n.1, it also says McGuire applied the substance (now ELIDEL 1% cream) to Banks's shoulders and then left the room, *id.* ¶¶ 10–11.  Banks flat out states that another nurse "rubbed [the cream] over Plaintiff's sensitive areas" after McGuire left.  *Id.* ¶ 12.  Banks has personal knowledge of those facts, and she relied on them when she first sought remand.  Pl.'s Mem. [9] at 6 (arguing that "[a] finder of fact can easily conclude that leaving a foreign chemical substance in a patient's room without physician approval constitutes a breach of the standard of care").

Now Banks says "Defendant McGuire applied ELIDEL 1% to Ms. Banks and said substance is contraindicated for use in the rectal or vaginal areas."  Pl.'s Reply [31] at 8 (citing McGuire Dep. [31-3] at 43–44).  She implies that McGuire must have applied the cream to those areas, but never directly says so; her complaint avers that McGuire did not.  Compl. [1-4] ¶ 10.  Nor does McGuire's cited testimony state that she applied the cream to the injured areas.  McGuire testified that she knew the cream should not be applied to the eyes, nose, mouth, vagina or rectum; and McGuire explained that she applied the cream consistent with that understanding.  McGuire Dep. [31-3] at 44–47.

The evolving nature of Banks's position demonstrates why the Fifth Circuit disallows such amendments when determining jurisdiction. In *Cavallini v. State Farm Mutual Auto Insurance Co.*, the court recognized that evidence can *clarify* an existing claim but observed that there are no cases "in which such evidence has been considered to determine whether a claim has been stated against the nondiverse defendant under a legal theory not alleged in the state[-]court complaint." 44 F.3d 256, 263 (5th Cir. 1995). That's because "[j]urisdictional facts are determined at the time of removal, not by subsequent events." *Flagg v. Stryker Corp.*, 819 F.3d 132, 137 (5th Cir. 2016) (quoting *Louisiana v. Am. Nat'l Prop. & Cas. Co.*, 746 F.3d 633, 635 (5th Cir. 2014)).

Thus, "to determine whether a plaintiff has improperly joined a non-diverse defendant, the district court must examine the plaintiff's possibility of recovery against that defendant *at the time of removal*." *Id.* (emphasis in original). Post-removal liability theories will not defeat jurisdiction. *Id.*

> Without such a rule, disposition of the issue would never be final, but would instead have to be revisited every time the plaintiff sought to amend the complaint to assert a new cause of action against the nondiverse defendant, all at considerable expense and delay to the parties and the state and federal courts involved.

*Cavallini*, 44 F.3d at 264; *see also id.* at 265 (finding diversity jurisdiction and noting that plaintiff's "proposed amended complaint [did] not clarify the jurisdictional facts *at the time of removal*; it attempt[ed] instead to amend away the basis for federal jurisdiction").

Banks is attempting to do the same thing through the arguments in her reply brief. Consequently, the Court will consider only the theory of recovery against McGuire that Banks pleaded in her state-court complaint. The next question is whether "there is no reasonable basis

6

for the district court to predict [Banks] might be able to recover against [McGuire]" for leaving ELIDEL 1% cream in Banks's examination room. *Smallwood II*, 385 F.3d at 572.

B.  Whether Banks's Claim is Legally Cognizable

Whether Banks can state a medical-negligence claim against McGuire is a question of Mississippi tort law. In Mississippi,

> [a] prima facie case for medical malpractice must be made by proving the following elements: (1) the existence of a duty by the defendant to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) a failure to conform to the required standard; and (3) an injury to the plaintiff proximately caused by the breach of such duty by the defendant. *Drummond v. Buckley*, 627 So. 2d 264, 268 (Miss. 1993) (citing *Burnham v. Tabb*, 508 So. 2d 1072, 1074 (Miss. 1987)). "When proving these elements in a medical malpractice suit, expert testimony must be used. Not only must this expert identify and articulate the requisite standard that was not complied with, the expert must also establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries." *Barner v. Gorman*, 605 So. 2d 805, 809 (Miss. 1992) (citing *Latham v. Hayes*, 495 So. 2d 453 (Miss. 1986)).

*Hubbard v. Wansley*, 954 So. 2d 951, 956–57 (Miss. 2007).

1.  Standard of Care and Breach

Both parties filed declarations from expert nurses addressing the standard of care. Banks's expert nurse, Lotashia D. Patrick, attested that ELIDEL 1% cream should never be applied to "a patient's eyes, nose, mouth, vagina or rectum." Patrick Decl. [31-4] ¶ 8. She further says such misapplication is a breach of the standard of care. *Id.* ¶ 10. She concludes with the opinion that the misapplication caused Banks's injury and thus McGuire was the proximate cause of the injury.[2] *Id.* ¶ 12. As noted, however, the Court must consider the facts Banks pleaded and not her new theory. Patrick's declaration addresses the latter. Defendants' expert

---

[2] As to the latter opinion, under Mississippi law, nurses cannot serve as experts on issues of medical causation. *See Vaughn v. Miss. Baptist Med. Ctr.*, 20 So. 3d 645, 652 (Miss. 2009) ("We now explicitly hold that nurses cannot testify as to medical causation.").

nurse, Susan Lofton, opines that leaving ELIDEL 1% in the room would not breach the standard of care. Lofton Decl. [28-2] ¶ 10.

Ultimately, Banks's own affidavit is the only support for the allegation that McGuire breached the standard of care by leaving the cream in the room. *See* Banks Am. Aff. [31-6] ¶ 5–6. But there are no pleaded facts plausibly suggesting that this is so, and neither party cites a case stating whether that conduct breaches the standard of care (the Court found no such authority either). Banks has not met her burden on this element, but even assuming she had, there is no reasonable basis to find that such breach was the proximate cause of Banks's injuries.

2. Proximate Cause

Leaving the cream in the room may have been a but-for cause of the injury, but proximate cause also requires foreseeability. "As is true of all negligence actions, a hospital must exercise reasonable care in preventing foreseeable injuries to foreseeable plaintiffs." *St. Dominic-Jackson Mem'l Hosp. v. Newton*, 336 So. 3d 1089, 1093 (Miss. 2022) (quoting *Clark v. St. Dominic-Jackson Mem'l Hosp.*, 660 So. 2d 970, 972 (Miss. 1995)).

Banks claims that McGuire left the cream in the room but that Jane Doe Defendant 1—a personal care assistant—applied it improperly. Compl. [1-4] ¶ 12; *see also* Banks Aff. [8-2] ¶ 4. And that provider was not the only one administering the cream. The records indicate that a variety of healthcare personnel applied the cream to Banks before and after April 30, 2021 (the date McGuire allegedly left it in Banks's room). McGuire Dep. [30-3] 39–41, 48; Treatment Admin. R. [30-7] at 1. Indeed, it was to be applied twice a day from on or around April 22 to May 2, 2021. *See id.* Put simply, there are no pleaded facts plausibly suggesting that McGuire should have foreseen another healthcare provider ignoring the product label and misusing the cream, especially when other providers were routinely administering it without incident. Nor has

8

Banks offered any legal authority suggesting that such negligence would be foreseeable to McGuire.³ As her complaint stands, there is no reasonable basis to predict that Banks can recover against McGuire. *Smallwood II*, 385 F.3d at 572.

Banks disagrees, stressing that the *Smallwood II* inquiry is whether there is a "***possibility*** of recovery against the local defendant." Pl.'s Reply [31] at 12 (emphasis in original) (citing *Smallwood II*, 385 F.3d at 573). True, but a "'mere theoretical possibility of recovery under local law' will not preclude a finding of improper joinder." *Smallwood II*, 385 F.3d at 573 n.9 (quoting *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000)). In fact, under *Smallwood II*, the Court can either conduct a 12(b)(6)-type analysis or go further and conduct a summary inquiry even where a plaintiff would survive a Rule 12(b)(6) challenge. *Id.* at 573. Here, Banks has failed a Rule 12(b)(6) challenge, and, even considering a summary inquiry, she has not established the elements of a claim through expert testimony.

---

³ Though not argued precisely this way, "negligence which merely furnished the condition or occasion upon which injuries are received, but does not put in motion the agency by or through which the injuries are inflicted, is not the proximate cause thereof." *Robison v. McDowell*, 247 So. 2d 686, 688 (Miss. 1971) (citations omitted). Thus, "[i]f the act complained of is only a remote cause, superseded by an independent, efficient intervening cause that leads in unbroken sequence to the injury, the original negligent act is not a proximate, but a remote, cause. Thus, not being foreseeable, the original cause is not actionable." *Id.* at 689. For example, in *Causey v. Sanders*, doctors at the University of Mississippi Medical Center (UMC) recommended hospice care for a patient they misdiagnosed with pancreatic cancer. 998 So. 2d 393, 396 (Miss. 2008). While in hospice, a doctor allegedly caused the patient to overdose on Dilaudid. *Id.* at 387. Though the cancer diagnosis was incorrect, the Mississippi Supreme Court held, as a matter of law, that "UMC could not have reasonably foreseen that when Allen entered the hospice, she would be overdosed with Dilaudid." *Id.* at 406 (affirming decision to deny apportionment-of-fault instruction regarding UMC's alleged negligence). The same is true here; the pleaded facts do not plausibly allege that McGuire should have foreseen another healthcare provider misusing the product.

IV.     Conclusion

The Court has considered all arguments; those not discussed would not change this result. Defendant Morgan McGuire's Motion to Dismiss [4] is granted; Plaintiff Queen Banks's Motion to Remand [8] is denied.  The parties are instructed to contact United States Magistrate Judge F. Keith Ball within 10 days of this Order to set the case for a case-management conference.

**SO ORDERED AND ADJUDGED** this the 17th day of January, 2023.

s/ *Daniel P. Jordan III*<br>CHIEF UNITED STATES DISTRICT JUDGE