UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

PRUNELLA BANKS as Administrator of the
Estate of Queen Ester Banks                                                                    PLAINTIFF

v.                                                                          CIVIL NO. 3:22-CV-433-DPJ-ASH

LAKELAND NURSING AND REHABILITATION
CENTER, LLC                                                                                    DEFENDANT

ORDER

Prunella Banks says Lakeland Nursing and Rehabilitation Center, LLC, injured her late mother, Queen Banks. Compl. [112-1]. Lakeland has moved [108] to exclude the opinions of Banks's retained nursing expert. The Court grants the motion in part and denies it in part.

I.      Background

The relevant facts appear in the Order entered this date on Lakeland's motion [106] for summary judgment. In brief, the suit alleges Lakeland injured Banks by misapplying a topical medication. Plaintiff offers a nursing expert, Lotashia Patrick, who is certified in Mississippi as an Advanced Practice Registered Nurse. Patrick CV [114-1] at 14. Her designation says she will offer opinions that Lakeland's staff misapplied the medication to Banks's "private areas," causing her "burning, itching, [and] irritation of her vaginal area." Pl.'s Desig. [108-1] at 8–9. At her deposition, Patrick also testified that the medication was misapplied to Banks's "groin and buttocks" so as to cause her "second-degree burns" and associated pain. Patrick Dep. [108-2] at 58–59 (original Bates numbering).

II.     Standard

As recently amended, Federal Rule of Evidence 702 allows admission of expert testimony if its proponent shows four elements by a preponderance of the evidence:

    (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

    (b) the testimony is based on sufficient facts or data;

    (c) the testimony is the product of reliable principles and methods; and

    (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court held Rule 702 requires the district court to act as a gatekeeper to ensure "any and all scientific testimony or evidence admitted is not only relevant, but reliable." This gatekeeping function applies to all forms of expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). The party offering the testimony bears the burden of establishing admissibility by a preponderance of the evidence. *United States v. Kuhrt*, 788 F.3d 403, 420 (5th Cir. 2015).

As gatekeeper, the Court must examine reliability and relevance. The reliability inquiry assesses the validity of the expert's reasoning and methodology underlying the testimony. *See Daubert*, 509 U.S. at 593. The Court must exclude any opinions based merely on subjective belief or unsupported speculation. *See id.* at 590. "[F]undamentally unsupported" opinions "offer[ ] no expert assistance to the [trier of fact]" and should be excluded. *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005).

Factors pertaining to reliability may include (1) whether a technique has been tested, (2) whether it's been subjected to peer review and publication, (3) its potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson v. Tex. Dep't of Crim. Just.*, 393 F.3d 577, 584 (5th Cir. 2004). But the Supreme Court emphasizes these

2

factors "do not constitute a 'definitive checklist or test.'" *Kumho*, 526 U.S. at 150 (quoting *Daubert*, 509 U.S. at 593). Rather, courts "must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 152.

"The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) (citation omitted). "Where the expert's opinion is based on insufficient information, the analysis is unreliable." *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009). And "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.*

As for relevance, the Court asks whether the expert's reasoning or methodology "fits" the facts of the case and will thereby assist the trier of fact to understand the evidence. *See Daubert*, 509 U.S. at 591. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* (quoting 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 702[02] (1988)).

The Court's gatekeeper function doesn't replace the traditional adversary system or the jury's role. *See id.* at 596. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* Thus, in determining the admissibility of expert testimony,

the district court must accord the "proper deference to the jury's role as the arbiter of disputes between conflicting opinions." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).  Whether the expert's opinions are correct is not for the Court to decide.  *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

III.    Discussion

Lakeland argues that Patrick cannot offer opinions about Lakeland's standard of care, any breach of it, or medical causation.

A.    Identifying the Standard of Care

According to Lakeland, Patrick can't testify about its standard of care because she lacks sufficient experience working at a nursing home, evaluating chemical burns, assessing skin breakdown, or applying the medication at issue in this case (Elidel).  Def.'s Mem. [109] at 5–6.  Banks counters that Patrick worked two months as a supervisor over the RNs at a nursing home and that her credentials qualify her to testify to the standard of care.  Pl.'s Mem. [115] at 4; Patrick Dep. [108-2] at 78–79.  Her CV shows that most of her practice has been as a psychiatric nurse.  Patrick CV [114-1] at 2–4.

None of the cases Lakeland cites say that the relevant nursing standard changes from one type of facility to the other, and Lakeland does not show that Patrick was unqualified to supervise nurses at a nursing home.  "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue.  Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).

4

Banks offers Patrick for the opinion that applying Elidel in a manner contrary to its manufacturer's recommendations would violate the standard of care. This is not an opinion that requires the level of particularized expertise Lakeland suggests. Whether a medication is correctly administered lies within the area of nursing practice. *Vaughn v. Miss. Baptist Med. Ctr.*, 20 So. 3d 645, 653 (Miss. 2009) (discussing holding in *Sacks v. Necaise*, 991 So. 2d 615 (Miss. Ct. App. 2007)). And Patrick' education and experience in various nursing jobs qualifies her to offer this opinion.

The Court denies Lakeland's motion insofar as Patrick may opine that Lakeland's standard of care required correct administration of medications such as Elidel.

B.      Breach of the Standard of Care

Although Patrick can testify about the standard of care, Lakeland has shown that she lacks sufficient facts to testify about whether Lakeland's staff did breach that standard by misapplying the Elidel.

Patrick looked at various records and one deposition to render her opinions. Patrick Dep. [108-2] at 28, 33, 48; Patrick Aff. [114-4] ¶ 6. But as to her breach opinion, Patrick testified that she relied on the allegations in the Complaint:

> Q.      So my question to you is: What medical evidence do you rely on for the proposition that [Lakeland's nurse] improperly administered Elidel?
>
> A.      From the plaintiff's Complaint.

Def.'s Mem. [109] at 7 (quoting Patrick Dep. [108-2] at 42).

Under Rule 702(b), experts must base opinions "on sufficient facts or data." Allegations in a complaint fail that test. *See Harris v. FedEx Corp. Servs., Inc.*, 92 F.4th 286, 303 (5th Cir. 2024) (holding district court should have excluded expert's opinions that were "based only on

5

her review of [the plaintiff's] complaint"). And, as noted in *Viterbo*, an expert must offer "more than [a plaintiff's] testimony dressed up and sanctified as the opinion of an expert." 826 F.2d at 424.

The Court thus grants Lakeland's motion to exclude Patrick's opinion that the facility incorrectly administered the medication to Banks. Patrick can opine that *if* the medication was applied other than as directed by the manufacturer, *then* a breach of the standard of care occurred.[1]

### C. Medical Causation

In *Vaughn*, the Mississippi Supreme Court stated: "We now explicitly hold that nurses cannot testify as to medical causation." 20 So. 3d at 652; *see also Tyson v. Lakeland Nursing and Rehab. Ctr.*, No. 3:15-CV-571-WHB-JCG, 2017 WL 5660019, *2–3 (S.D. Miss. Aug. 31, 2017) (excluding medical-causation opinions offered by a nurse practitioner).

Banks neither acknowledges nor tries to distinguish *Vaughn*, and her cited authority predates that holding. Lakeland's motion is granted as to Patrick's medical-causation opinions. To the extent that Patrick in her deposition said or implied that the Elidel caused second-degree burns or other severe injuries to body parts for which Elidel is not contraindicated, those opinions went beyond the scope of a nursing expert and are thus inadmissible.

### IV. Conclusion

The Court has considered all arguments presented. Any not specifically addressed here would not change the result. Lakeland's motion [108] is denied in part, insofar as Patrick may

---

[1] This is not fatal to Banks's claim because her niece's testimony, which Patrick did not mention, provides a factual basis for finding that Lakeland applied Elidel in a way that breached the standard of care. *See* Braxton Dep. [112-2] at 70–71.

offer opinions at trial about what standard of care applied to Lakeland's administration of topical medication to Banks and whether any application to areas contraindicated for that medication would violate the standard of care. Any other opinions from Patrick, including those alleging breach or addressing medical causation, are excluded.

**SO ORDERED AND ADJUDGED** this the 6th day of February, 2025.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE