UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

PRUNELLA BANKS as Administrator of the
Estate of Queen Ester Banks                                                                         PLAINTIFF

v.                                                                                  CIVIL NO. 3:22-CV-433-DPJ-ASH

LAKELAND NURSING AND REHABILITATION
CENTER, LLC                                                                                         DEFENDANT

ORDER

Prunella Banks says Lakeland Nursing and Rehabilitation Center, LLC, injured her late mother, Queen Banks, by misapplying a topical treatment that caused chemical burns. Compl. [112-1]. Lakeland moves [106] for summary judgment. The Court grants the motion in part and denies it in part. In general, the Court finds a jury question for injuries to body parts for which the topical was contraindicated but that Banks has not met her burden as to other wounds treated in the weeks and months after she left Lakeland.[1]

I.   Background

Banks claims that someone at Lakeland rubbed a topical medication "all over [her] body" that caused "extreme burning, itching, irritation and pain." Compl. [112-1] ¶¶ 9–12. Her niece, Vicki Braxton, testified that Banks called her "screaming" because "they" had "put some type of ointment on me" that was "burning my bottom and my vagina area." Braxton Dep. [112-2] at 70–71. Banks left Lakeland on May 2, 2021; there is conflicting evidence whether she was still suffering from the alleged misapplication when she departed.

---

[1]Sadly, Queen Banks passed away in October 2023; the Court therefore substituted her daughter Prunella Banks, administrator of the estate, as Plaintiff. Mot. [89]; *id*. Ex. 1 [89-1] (petition to open estate); Order [91] (granting substitution). Though Prunella is technically the named plaintiff, the Court will refer to Plaintiff as "Banks," meaning Queen Banks.

About two weeks later, Banks visited Baptist Hospital. According to those records, Banks told the nurse that the "area to her groin has healed, now with dry flaking skin that itches." Baptist Med. Records [112-6] at 2. Her chief complaint was what the records described as a second-degree chemical burn on her left buttocks and another burn just below that in the ischium area. Baptist Med. Records [106-6] at 2, 6. Months later, in November 2021, she received treatment at Wound Management Specialists for two non-healing wounds, the first in the sacral area and the second in the right inner thigh. WMS Med. Records [112-9] at 1–2.[2]

Banks sued Lakeland in Mississippi circuit court in June 2022 for medical negligence. Lakeland removed the case [1], and the Court denied a motion to remand while dismissing the facility's administrator as improperly joined, Order [36]. The Court has thus established its subject-matter jurisdiction. Lakeland now seeks summary-judgment, and its motion [106] has been fully and well briefed by the parties.

II.     Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute about any material fact and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case[ ] and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

---

[2] The medical records are at times imprecise when describing the locations of Banks's wounds, but a photograph taken on May 16, 2021, shows the major concerns at that time. Out of respect, the Court has not reproduced that photograph, but it is in the record. *See* Baptist Med. Records [106-6] at 6.

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion[ ] and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). It must "interpret all facts and draw all reasonable inferences in favor of the nonmovant." *EEOC v. Rite Way Serv.*, 819 F.3d 235, 239 (5th Cir. 2016); *accord Tolan v. Cotton*, 572 U.S. 650, 660 (2014). But conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

III.    Discussion

Before examining Banks's claims, the Court must consider which topical ointment allegedly caused her injuries. Banks's summary-judgment response mentions two—Biofreeze gel and Elidel 1% Cream (generic name, pimecrolimus). Biofreeze gel and Elidel cream are not the same thing. Elidel cream "is formulated to treat eczema and related skin conditions like dermatitis." Cleary Dec. [106-2] ¶¶ 9, 13.

3

In her summary-judgment response, Banks first notes that "[u]ntil the day of her death, Banks always contended that 'upon information and belief, the substance was Biofreeze gel.'" Pl.'s Mem. [113] at 2 (quoting Compl. [1-1] ¶ 10).  That contradicts her sworn testimony.  *See* Banks Aff. [30-6] ¶ 2 (stating that Elidel cream caused injury).  In any event, the rest of her response argues that she has met her burden of proof based on negligent use of Elidel cream, an argument for which she offers expert testimony.  Pl.'s Mem. [113] at 5.  And that expert concluded that Biofreeze gel "was not applied to Ms. Banks'[s] body."  Patrick Decl. [114-4] ¶ 11.

Because Banks offers no expert testimony or legal argument about Biofreeze misuse, any claims based on it cannot survive summary judgment.  *See Catrett*, 477 U.S. at 324 (holding that nonmoving party must "designate specific facts showing that there is a genuine issue for trial") (punctuation altered).  So like the parties, the Court will focus on Elidel cream and whether Banks has created a material factual dispute about its misuse.

A.    Medical-Negligence Claim

Mississippi substantive law applies to this diversity-jurisdiction case.  *Md. Cas. Co. v. Williams*, 377 F.2d 389, 393 (5th Cir. 1967).  Under Mississippi law,

> [t]o present a prima facie case of medical malpractice, a plaintiff, (1) after establishing the doctor-patient relationship and its attendant duty, is generally required to present expert testimony (2) identifying and articulating the requisite standard of care; and (3) establishing that the defendant [practitioner] failed to conform to the standard of care.  In addition, (4) the plaintiff must prove the [practitioner]'s noncompliance with the standard of care caused the plaintiff's injury, as well as proving (5) the extent of the plaintiff's damages.

*Cheeks v. Bio-Med. Apps., Inc.*, 908 So. 2d 117, 120 (Miss. 2005) (citation omitted).

Success in establishing these elements "rests heavily on the shoulders of the plaintiff's selected medical expert." *Est. of Northrop v. Hutto*, 9 So. 3d 381, 384 (Miss. 2009). The expert's testimony must be specific, "identif[ying] the particular(s) wherein the [practitioner] breached that duty and caused injury to the plaintiff patient." *Phillips ex rel. Phillips v. Hull*, 516 So. 2d 488, 491 (Miss. 1987), *overruled on another grounds by Whittington v. Mason*, 905 So. 2d 1261 (Miss. 2005). "Not only must this expert identify and articulate the requisite standard that was not complied with, the expert must also establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries." *Hubbard v. Wansley*, 954 So. 2d 951, 957 (Miss. 2007) (citations and quotations omitted).

Banks argues that her retained nursing expert and the expected testimony of her treating physicians satisfy these requirements for all reported injuries. But she alternatively argues that the Court may avoid the expert requirement based on the layman exception and res ipsa loquitur. The Court will first consider the evidence about the alleged injuries to Banks's vagina and rectum and then consider evidence related to other injuries.

1. Injuries to Vagina and Rectum

As noted, Banks alleges that Lakeland employees applied Elidel cream in a way that contacted her vagina and rectum, causing near immediate injury. Her niece, Vicki Braxton, testified that Banks called her screaming in pain after Lakeland employees rubbed a topical "all on—on her bottom and all on her—around her vagina area." Braxton Dep. [112-2] at 72–73.

Banks then offers expert opinions from Lotashia Patrick, a retained nurse practitioner, who testified that Elidel should not be administered to the vagina or rectum. Patrick Decl. [114-4] ¶ 8. The Elidel insert says the same thing: "Do not get ELIDEL Cream, 1% in your . . .

vagina, or rectum (mucous membranes)." Elidel Insert [31-5] at 3. Braxton's testimony coupled with Patrick's opinion are enough to create a fact question whether Lakeland employees breached the standard of care by applying Elidel in a way that contacted her vagina and rectum.

The next question is proximate cause. Patrick addressed that too, opining that Lakeland's negligence "proximately caused the burning, itching and irritation which Ms. Banks experienced." Patrick Decl. [114-4] ¶ 12. But the Mississippi Supreme Court has held that "nursing experts cannot opine as to medical causation and are unable to establish the necessary element of proximate cause." *Vaughn v. Miss. Baptist Med. Ctr.*, 20 So. 3d 645, 652 (Miss. 2009) (joining majority rule).

While Patrick may not be qualified to offer expert causation opinions, this part of Plaintiff's case does not depend on those opinions. Lakeland's expert, Dr. John D. Cleary, attested that "on rare occasions, Elidel Cream may cause a burning sensation or skin irritation." Cleary Aff. [106-2] ¶ 14. And Lakeland has never disputed that Elidel should not be used on the vagina, rectum, or mucous membranes. Combined with the testimony that Banks called her niece screaming about pain in those areas, a jury question exists on causation.

The Court notes that Lakeland mostly focuses its motion on the wounds in other areas of Banks's body, including chemical burns to her buttocks. But the pain Banks reported after the alleged misapplication of Elidel is no less compensable and satisfies the injury element of a negligence claim.

    2.  Other Wounds

Things get harder for Banks when addressing the other alleged injuries. As a reminder, Banks left Lakeland on May 2, 2021. She reported to Baptist Hospital on May 16, 2021, and

was diagnosed with second-degree chemical burns on and near her buttocks. Baptist Med. Records [112-6] at 2. Banks has identified no medical records indicating then-existing wounds on her vagina or rectum. This presents two questions. First, would it breach the standard of care to apply Elidel cream in the areas where the burns occurred. Second, did the application proximately cause those injuries.

To begin, Banks offers no expert testimony that Lakeland employees breached the standard of care if they applied Elidel in the areas where the chemical burns occurred. That treatment is not contraindicated by the product insert, and Banks's only retained expert (Patrick) never explains how such use can breach the standard of care. Expert testimony is required to prove this element. *Phillips*, 516 So. 2d at 491. Summary judgment is therefore appropriate for any claim that Lakeland employees misapplied Elidel to the areas where the burns occurred.

Even with competent evidence on breach, Banks must still show proximate cause. She offers Patrick, but Patrick is not qualified to testify that Elidel misuse caused the chemical burns and wounds Banks suffered. *Vaughn*, 20 So. 3d at 652. Lakeland's retained expert, Dr. Cleary, is qualified, and he opined that "Elidel Cream does not cause skin breakdown, stage 2 wounds, second degree burns, or related skin issues like the injuries Plaintiff asserts." Cleary Decl. [106-2] ¶ 15.

Cleary's opinion is unrebutted. But Banks says a fact question remains based on her treating physicians and under the layman's exception or res ipsa loquitur.

***Plaintiff's treating physicians:*** Queen Banks's doctors were never deposed and provided no expert reports outlining opinions they would offer. Banks therefore relies on her

own expert designations to avoid summary judgment. Pl.'s Mem. [113] at 4 (citing Expert Designation at 7) (emphasis added).

Simply put, "expert disclosures . . . are not evidence nor can [they] be presented in a form that would be admissible at trial as required by Rule 56(c)(1) and (2). Those disclosures are simply counsel's summary of anticipated testimony from various witnesses. These statements by counsel are clearly inadmissible hearsay." *Joseph ex rel. Wrongful-Death Beneficiaries of Reginald Joseph v. United States*, No. 3:22-CV-193-DPJ-FKB, 2023 WL 11113879, at *3 (S.D. Miss. Nov. 14, 2023) (quoting *Sauers v. Winston-Salem/Forsyth Cnty. Bd. of Educ.*, No. 1:15-CV-427, 2018 WL 1627160, at *5 (M.D.N.C. Mar. 30, 2018)); *see also May-Weirauch v. Ethicon, Inc.*, No. 120-CV-01205, 2020 WL 6946445, at *6 (C.D. Ill. Nov. 25, 2020) (holding that designation of non-retained experts "does not qualify as evidence in . . . opposition to summary judgment") (citing *Huggins v. N.C. Dep't of Admin.*, No. 5:10-CV-414-FL, 2013 WL 5201033, at *20 n.7 (E.D.N.C. Sept. 13, 2013) (refusing to consider expert disclosure under Rule 56(c)); *accord Griffin v. Town of Cutler*, No. CIV. 05-52, 2006 WL 2668460, at *8 n.12 (D. Me. Sept. 15, 2006).

Lakeland does, however, acknowledge that a treating physician may offer expert opinions within the scope of "opinions contained in the physicians' treatment records." Def.'s Reply [116] at 5 (citing *Little v. Synergies3 Tec Servs., LLC*, No. 1:21-CV-8-GHD-DAS, 2022 WL 3438368 (N.D. Miss. Aug. 16, 2022) (explaining that because treating physicians were not required to provide written reports, their testimony is limited to the facts and opinions contained in the treatment records)). So, if Banks's doctors recorded causation opinions in their records, they might be admissible. Banks says they did. According to her, the treating physicians

8

"opined that the second-degree chemical burns were caused when a Lakeland nurse put the wrong substance on Banks'[s] genitalia and buttock." Pl.'s Resp. [113] at 10 (generally citing Baptist Med. Records [112-6]).

But Banks doesn't cite "to particular parts of materials in the record" containing those opinions. Fed. R. Civ. P. 56(c)(1)(A). Nor could the Court find them. To be sure, the medical records include histories taken from Banks in which she recounts what she said happened at Lakeland. *See, e.g.*, Baptist Med. Records [112-6] at 2. But the Court found no opinions from doctors stating that Elidel misapplication caused the chemical burns in the areas where Banks's chemical burns appeared. In short, Dr. Cleary's opinion that Elidel cannot cause such injuries is unrebutted, so there is no material dispute.

**Layman's exception:** Banks tries to overcome these problems by invoking the layman's exception. Under that theory, expert testimony is not required when "a layman [could] observe and understand the negligence as a matter of common sense and practical experience." *Smith ex rel. Smith v. Gilmore Mem'l Hosp.*, 952 So. 2d 177, 180–81 (Miss. 2007). This exception covers only "purely factual matters," and the courts "will allow lay plaintiffs few interpretive prerogatives regarding medical care and treatment." *Kelley v. Frederic*, 573 So. 2d 1385, 1388 (Miss. 1990).

The Mississippi Supreme Court "has not applied the 'layman's exception' to issues of medical causation." *Tobias v. Univ. of Miss. Med. Ctr.*, 282 So. 3d 1188, 1191 (Miss. Ct. App. 2019). And in *Vaughn*, the court held that the plaintiff's "argument that lay-witness testimony can establish the element of proximate cause is without merit" because "[a] lay witness cannot render an opinion as to whether the symptoms exhibited by Vaughn were associated with

infection." 20 So. 3d at 654; *but see Nelson v. C.R. Bard, Inc.*, 44 F.4th 277, 286 n.6 (5th Cir. 2022) (construing *Vaughn* in a products-liability case as not requiring expert causation testimony in every case).

Though it does not appear that a Mississippi court has applied the exception to causation in a medical-negligence context, this Court is not willing to say it could never happen. But the chemical-burn claims in this case are factually like *Vaughn*.

Again, the question is whether applying Elidel caused the chemical burns and wounds for which Banks later sought treatment at Baptist and other places. Elidel is not contraindicated for use in these areas. Patrick Dep. [108-2] at 55–56. And given Dr. Cleary's unrebutted testimony that it cannot cause those injuries, a jury could not find that it did based on "common sense and practical experience." *Smith*, 952 So. 2d at 180. Such a finding would require expert knowledge. *See Palmer v. Anderson Infirmary Benev. Ass'n*, 656 So. 2d 790, 794–95 (Miss. 1995) (declining to apply layman exception "although[] it may not [have been] difficult for laymen to see a causal connection").

**Res ipsa loquitur:** Similar problems exist under res ipsa loquitur (roughly, "the thing speaks for itself"). Res ipsa is a presumption of negligence with three elements: "1. the event must be one that would not normally occur absent someone's negligence; 2. the event must be caused by an agent or instrumentality within the defendant or defendants['] exclusive control; and, 3. the plaintiff must not have voluntarily contributed to the event." *Winters v. Wright*, 869 So. 2d 357, 362–63 (Miss. 2003). To apply, there must have been some "extraordinary incident or unusual event, outside of the routine of the action of its performance" that is also "beyond the regular scope of its customary professional activity in such operations" and could be understood

10

by "the average man as the negligent cause or causes of the untoward consequence." *Id.* at 363 (quoting *Sanders v. Smith*, 27 So. 2d 889, 893 (Miss. 1946)).

As the reference to "the average man" suggests, Mississippi cases considering res ipsa have treated it similarly to the layman exception. *Id.* The "general rule is that medical negligence may be established only by expert medical testimony, with an exception for instances where a layman can observe and understand the negligence as a matter of common sense and practical experience." *Id.* (quoting *Coleman v. Rice*, 706 So. 2d 696, 698 (Miss. 1997) (applying res ipsa when object left inside patient after surgery)).

For the reasons addressed under the layman's exception, the causal connection between Elidel and Banks's burns/wounds is not "a matter of common sense or practical experience." *Id.* Nor has Banks shown that the event was "within the . . . defendants['] exclusive control," *Winters*, 869 So. 2d at 362, because her medical records show the use of other topicals after she left Lakeland.

In sum, Banks needs an expert to establish proximate cause. And without that evidence, Dr. Cleary's opinion that Elidel could not have caused the chemical burns and other unhealed wounds remains unrebutted. Summary judgment is therefore granted as to those injuries.

    B.    Other Claims

        1.    Negligent Hiring, Retention, and Supervision

Lakeland argues that Banks offers no evidence of the standard of care it owed Queen Banks in relation to hiring, retention, supervision, and the like. Def.'s Mem. [107] at 15 (citing *Est. of Guillotte ex rel. Jordan v. Delta Health Grp., Inc.*, 5 So. 3d 393, 410 (Miss. 2009)). Banks responded:

11

> Since the discovery in this case shows that Lakeland breached the standard of care, then that act of negligence would fall under "other acts of negligence that will be shown at trial" as was pled in Plaintiff's complaint. *See* Exhibit A.
>
> To this end, this Court should not rule that there are no set of facts that can be proven to support alternative negligent claims against Lakeland.

Pl.'s Mem. [113] at 14.

Under Rule 56, the nonmovant must "go beyond the pleadings." *Catrett*, 477 U.S. at 324. Yet Banks provides neither facts nor a legally supported argument. *See McCain v. Miss. Hous. Dev. Corp.*, No. 2:95-CV-140, 1996 WL 33370633, at *1 (N.D. Miss. Jan. 19, 1996) (finding argument waived where party cited no authority in responding to motion to dismiss). The motion is therefore granted.

### 2. Informed Consent

Banks pleaded a claim for informed consent but never mentions it in response to Lakeland's summary-judgment motion. Without any facts or arguments, the motion is granted. *Id.*

### 3. Res Ipsa Loquitur

Banks appeared to plead a cause of action for res ipsa loquitur in her Complaint [1-1], but Lakeland argues that res ipsa is an evidentiary theory not a cause of action. Def.'s Mem. [107] at 15. Banks appears to agree; she argued res ipsa as an evidentiary matter but did not address it as a separate cause of action. The motion is granted as unopposed.

### 4. Gross Negligence

Lakeland says because the medical-negligence claim fails, Banks's "claim for gross negligence should be dismissed as a matter of law." *Id.* at 17; *see also* Def.'s Reply [116] at 9. But the negligence claim survived to some extent, so this part of the motion is denied.

IV.     Conclusion

The Court has considered all arguments presented.  Any not specifically addressed here would not affect the result.  Lakeland's motion for summary judgment [106] is granted in part and denied in part.

**SO ORDERED AND ADJUDGED** this the 6th day of February, 2025.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE
